First one is Grimsley v. Manitowoc, appellate number 19-1479. Good morning, your honors. Robert Engler, counsel for appellate. I would ask to reserve five minutes for rebuttal. Will be granted. Would the court like a brief recitation of facts? Are you familiar I think we're familiar. Thank you for asking. And I'll move right into it. Despite the second appearance before this court generally and Circuit Judge Schwartz specifically in this matter, it's ultimately a simple tort case in which a pedestrian was struck and killed by a vehicle. And although I'm not in the habit of quoting dissenting opinions as I was contemplating what to say to your honors this morning. Interesting you use the word pedestrian. Pedestrian or employee? Someone who's not in a vehicle. It's a vehicle, non-vehicle collision, your honor. Although not in the habit of quoting dissenting opinions as I was contemplating what to say to your honors that hasn't been extensively briefed. I was struck by all things by the dissenting opinion of Justice Stevens in Anderson v. Liberty Lobby. One phrase in it where he transformed what is meant to provide an expedited summary procedure into a full-blown paper trial on the merits. Well let's talk about what the paper record shows us. One of the things it shows us in the amended complaint specifically at paragraphs 58 and 59 is the statement that Kyle Malott was an employee of Grove. And as I understand from the paper record, it's undisputed, he had an assembler's job as did Mr. Grimsley. One was an A, one was a C, but they both had the position maybe just with more seniority being granted to Mr. Grimsley. If Malott having the assembler's job as an employee, then so should be Mr. Grimsley pursuant to the complaint itself. So doesn't that end the discussion that they're both Grove employees? I wish it did your honor. I wish it was that simple, but when you look into the record of what was happening at the facility, Malott was hired at a different time. He was on a different shift. He was actually spent most of his time up until I believe it was a few weeks before this incident on what they called the man lift line, which was a type of crane that was not operated by someone sitting in a cab. It was operated by a remote, sometimes called a cherry picker. The way in which these different companies were operating at the facility is not at all clear. Certainly all of the parties involved were receiving checks that said Grove, but at the end of the year receiving W-2 statements with employer identification numbers from Manitowoc. Well, we know from the record though that in 2013 there was a change in who the paying agent was. We know the chargeback system and all of that, how the corporation and the subsidiaries worked that out. So we're aware of all of that. But how does that change? Let's talk about the functions test. We'll get right to that. Grove had a function. It made these hydraulic cranes. Manitowoc has a variety of other businesses. It makes refrigerators for food services. It makes marine equipment. How did Mr. Grimsley's work further the function of Manitowoc, which has a broad portfolio? I would disagree that presuming that the function is that Grove made these cranes, Judge. Disagree that they made the cranes? Yes, Judge. Who made the cranes? Manitowoc made the cranes. Which are Manitowoc's own annual reports. They're 10-Ks that are filed. You say they made the cranes. They say they made the cranes. From their annual report. But really, aren't you saying that Manitowoc's logo, their name, and their copyright, that because of the appearance of those three things on the documents, that that by necessity suggests that Manitowoc's functions included designing, manufacturing, and selling of cranes? Isn't that what you're arguing? It's more than that, Judge. It's more than that. Their own words in their papers are, we, as a Manitowoc, design and manufacture. Yeah, but we's got a big umbrella. We includes a whole host of subsidiaries. In their documents, Judge, it is limited only to Manitowoc. Oh, you know, I don't know. You'd call it puffery in the securities sense. But it was documentation of which they were claiming control over all of these entities, one of which was Grove. Judge, the words Grove, U.S. LLC, don't appear anywhere in those documents. They don't appear anywhere in anything, any part of the record, other than on pay stops. Except your, the opposition argues that they operate the shady Grove facility where this accident happened. But on summary judgment, Your Honor, it's the plaintiff's presentation of the facts that be accepted as true and viewed in the most favorable light. Unless no reasonable juror can find for you, and then it's summary judgment, you would not, wouldn't necessarily go to a jury. Well, Judge, we do have the evidence of the, the W-2s were brought up earlier, and there is an explanation. There's an explanation that there was a change in payroll processors and whatnot. Is there any evidence that Manitowoc actually supervised the construction of these cranes and supervised the employees who were working in the construction of these cranes? Yes, Your Honor. Or are you focusing on a paper record? Judge, we're focusing on the policies. It's an incorporable entity. Policies. I'm talking about on site. Were they actually supervising on site the construction of cranes? Yes, Judge. It's our position that the supervisors were Manitowoc employees. Even though every one of the deposition people deposed to work at Grove said they were Grove employees and described how the safety materials were created by Grove employees, how a Grove supervisor, this is through their testimony, managed what occurred at the site. How do you overcome that? But Judge, that's what their testimony is, but their documents and everything else say Manitowoc. Those individuals wear Manitowoc shirts to all of the folks there. Every employee looking at, switching, I guess, to the more of the indicia of control issue is that although they were all receiving checks that said Grove, their W-2s said Manitowoc. Now, that change didn't happen until after they received notice of this claim, and that's briefed at length. But every person who comes onto the facility has issued a Manitowoc badge. It doesn't say Grove US LLC, it says Manitowoc. But in Mohan, which is a case that you all know and have cited, there was evidence of the gate pass that allowed folks access to the facility where the accident in that case occurred, and that was not an indicator that the parent was responsible. So isn't this, aren't the logos that Judge Fisher was asking you about, and the labeling and all the branding akin to the gate pass, and that's not showing function or that it was a Manitowoc employee, is it? Because the policies are emanating from Manitowoc. They are Manitowoc work instructions. Now, the witnesses are saying those are Grove policies. However, the documents themselves indicate that they are Manitowoc, that they a jury should be entitled to look at the document, listen to the testimony. If they believe the testimony, then certainly that my client would not win the case. But if they believe that the document says, means what it says, then... Your argument, in essence, calls into question Manitowoc's argument that all they were was a parent, and yes, there was a paper trail, but we did not control any of these functions. Your argument is, that's not true, but what evidence do you have that Manitowoc was the employer? We have, in terms of the initial... Other than the paper. In terms of the initial control, Wayne Bunch, who is the Vice President for Manitowoc Company, Inc., initiated the process to terminate Mr. Mellott in this particular case, so they're involved on that level. But they suggested that that occur, they were not involved in the termination. The testimony judge was that he initiated the investigation, and that Mr. Brian Smith, who was the head of the Human Resources for Manitowoc Americas, made the decision to terminate Mr. Mellott after consulting with Mr. Bunch. In terms of wages, like I said, there's also the fact that the workers' comp has been paid by Manitowoc Company, in the case. I was curious about your contention that Mellott was actually employed by Grove, and that Grimsley was employed by Manitowoc. Could you clarify that? Judge... Is that your contention? It is, Judge. And we don't know why the defendants have taken the position that Mellott was employed by Grove. Wait a minute, you, but in your complaint, at paragraphs 58 and 59, that's what the plaintiff's position is, that he is an employee of Grove. And like Judge Fuentes, I can't decipher how you're distinguishing two gentlemen who had the same job title, at different ranks, performing similar tasks at the same location, receiving the same paid materials, have a different employer. Judge, that was the position that the defendants took in the case. We adopted it in the amended complaint. In the original complaint, we had pled that Mellott was an employee of Manitowoc. Right, but the operative pleading now is the amended complaint, whether it was the reason for the decision to change it is interesting, but not responsive to what I think Judge Fuentes and I are wrestling with, is that very representation. Right, and the evidence that we found from Mr. Grimsley suggested that he was a Manitowoc employee, which is why we sought and received permission to amend the complaint. But even if both parties are deemed to be Grove, that doesn't end the inquiry, because Judge Schwartz, you specifically dealt with a case of similar nature involving a parent and subsidiary in Cunningham versus Tudor-Perini building. That particular case dealt with statutory employer issue that's not present here, but the two entities were parent and subsidiary, and you correctly held that the burden of proof is the ordinary elements of negligence. Now, in that case, you found that the non-immune entity would not be liable to Mr. Cunningham because there was no evidence of safety policies and procedures in place from that entity at the location. And you may face a similar challenge if our court were to decide that Manitowoc is not the employer, because your alternative theory of liability, as I understand it, as it relates to Manitowoc is negligence. Correct. And if you're going to proceed, as you know from our prior panel's opinion in this very case, it has to show sort of direct participation. And you're going to need to point in the record where is there evidence of direct participation that led to the incident that led to the unfortunate event. And that evidence, Judge, is both in Manitowoc's policies and procedures and also in the expert reports that were produced. And I see that I've exhausted my... If I could, if you could indulge me one question on another topic. I'm curious about your argument that Manitowoc owed Grimsley a duty. What's your best argument on that? The best argument on that is that they were running the facility. Duty, I guess I should add, a duty other than the typical duty that a parent would owe to employees of a subsidiary. That they were running the facility. They were on site issuing the policies, both safety and the manner in which the work was to be performed. And that those policies were insufficient and that they weren't properly enforced based on the expert testimony that we provided, Judge. If we were to agree with you that Grimsley was Manitowoc's employer and we were to also say Mellon was Manitowoc's employer, then you basically have no case. Isn't that accurate? But we would proceed against Grove... You have a complete workers' compensation case rather than a personal injury case. We would still have a separately viable claim against Grove, Your Honor, because only one entity in the... But you can't now because Grove is an employer. Is that accurate? Well, under the way that the district court decided with Grove being the employer of Mellon, that becomes the immune case. The only viable claim would be Manitowoc. If it's switched and the court determines that Manitowoc is the only, or is the employer, then Grove becomes a viable entity. And how are you going to prove negligence? Now you just said that all the negligence evidence that Judge Fischer asked you about demonstrate Manitowoc issued the policies, ran the facility. If we were to conclude Manitowoc was the employer, what's your evidence against Grove then? We have a separate set of expert reports against those entities, Judge, against Grove. And what's their duty? I'm back to what Judge Fischer is saying. I'm just talking about a different entity. What's your theory on Grove? Grove is the landowner. Grove has a duty to anyone that enters the land to make sure that the operation is being conducted safely. All right. We'll have you back up on the floor. May it please the court, Stephanie Hersberger on behalf of Appley Grove, US LLC, and Kyle Millet. And counsel over here, Dennis Herbert represents the Manitowoc, Appley's. And we've split our time. I have seven minutes and he has eight minutes. Your honors, I'll get right to the point. The questions you asked counsel for plaintiff and the evidence that he thinks precluded summary judgment is because the word Manitowoc appeared on certain documents. If that's all we had in this case, perhaps, perhaps they might be able to overcome the summary judgment. But facts were put onto the record explaining those documents. The important question is who employed who? Excuse me, your honor? Who employed who? Grove. Let me put it this way. Who had the power to hire and fire either of these two employees? And that was Grove, US LLC. Your honor, counsel had mentioned that Wayne Bunch out at Manitowoc actually was involved in the firing. And that is not accurate in the testimony. Mr. Smith, who was the human resources director, actually testified that Wayne Bunch asked him to investigate the accident. But he said it was his choice to terminate Mr. Mellot upon the advice of counsel and with the approval of the operation, the vice president of operations. Manitowoc did not, was not involved in any way in the firing of Mellot. Correct, your honor. But why would they have an interest in having an investigator? Because they're the parent company and they are concerned about what goes on with their subsidiaries. And didn't Mr. Smith have to report back to them his findings and confer with them about his proposed recommendation of termination? He did not say he conferred with Mr. Bunch about his recommendation of termination. He said he conferred with the vice president of operations for Grove. I don't honestly know if there were ever any conversations with them. There's nothing on the record of that. Who's the vice president of operations for Grove? Your honor, there were two different people and he could not remember which one. So I'm not sure. But they had an office at. Let's talk about Mr. Smith. Mr. Smith worked at three different locations, worked at Shady Grove and two others, represented himself in his own LinkedIn pages as having a position at Manitowoc, not not at Grove. Now, I recognize it's his LinkedIn page. It's not Grove's or Manitowoc's. But nonetheless, doesn't the fact that he described himself as working at different locations and having responsible different places suggest that he wasn't working for Grove, but was working for Manitowoc? And as a result, it was Manitowoc through him that led to the decision on termination? Your honor, that's a good question. Mr. Smith testified when he originally was employed and hired. He was only for Grove U.S. LLC. And then after a few years, they also asked him to take on these additional positions. He didn't give up the original position at Grove U.S. LLC in Shady Grove. He continued to be in charge of human resources there. He had an office there. You know, he actually was paid by Grove U.S. LLC, just like all the other people involved in this incident. Yes, he did have another position for Manitowoc when he would go out to the different places. But in this case, there's nothing that says one person can't have separate roles, your honor. So the record evidence would demonstrate who was his employer? Mr. Smith's the question. Who was his employer? Grove U.S. LLC. And what would we look at? Grove U.S. LLC. And what would we look at from the record that's undisputed for the purposes of a summary judgment record? One thing under the other industry of control is who paid his wages and who had the obligation to. And that was Grove U.S. LLC. There's Manitowoc is never mentioned on any payroll records for Mr. Smith, Mr. Grimsley, Mr. Mellon. Well, he's on there on the W-2s, not that who pays the wages is so dispositive for industry control, but I don't think you say they're not on anything. They're on the W-2s. Well, your honor, the last I'm sorry, I didn't mean to interrupt you. Two separate documents, the payrolls that show the direct deposits, where the bank, where the money's coming from, is what I was referring to. The W-2s, they say in care of Manitowoc or that Manitowoc was the agent. They never say that Manitowoc was actually the employer. And yes, they did have the FEIN number on there, but there was a testimony about how that happened, why it changed. There was a third party administrator. And, you know, counsel for plaintiff, if they thought that was suspicious or what have you, could have taken the deposition of any of those people. So, Ms. Herzberger, if we found that Manitowoc was the employer and that meant that Grove would not be the employer for purposes of this suit, but you would have some role, what about your duty? Was, and there's a negligence claim here in this case. Why didn't Grove, as at least the landlord of the Shady Grove facility, and the person who, and the entity that was the on-site operator, why didn't they owe a duty to Mr. Grimsley for a safe work environment? If they were not the employer and your honors found that, they did owe a duty then, and they would probably go to trial. They are here on workers' compensation immunity because they are the employer. Now, under the dual capacity doctrine, because they were the employer, I know sometimes if someone's, for instance, is employed by, say, Grove, if they're working there at the time, then workers' compensation applies. If they're visiting there and injured, then it wouldn't, but that's not in this case. I think that they have experts and, of course, we have a position to go to trial to say we weren't negligent, contributory negligence, but yes, we would be in the case. Was that your honors' question? I guess Mr. Herbert will ably be able to set a circumstances, but I guess I'm a little bit surprised by your answers that you would concede that. I don't concede there was negligence. But I appreciate the concession. I don't concede there was negligence, your honor. I concede that they owed a duty if they were not the employer. They have a duty. Okay. Yes. Despite the Manitowoc's ownership of the facilities and the equipment, you say they have no responsibility because of Grimsley's death. Manitowoc did not own the facility or the equipment. Did your honor mean Grove? I thought Manitowoc owned the facility. No. It didn't own the land. It didn't own the facility either. That's Grove US LLC. There's nothing in the record that says that. Can you clarify, what was Manitowoc's interest in Grove? Sure. The Manitowoc Company, and this is set forth in an affidavit, answers to requests for admissions and the deposition of our Manitowoc's corporate designee, who we took as deposition. It's the parent company. It's the umbrella company. It owns the subsidiaries. That's a big deal, isn't it? But they're individual. They're separate. Just like, for instance, they cannot take advantage- Manitowoc owns Grove. Is that correct? Yes. And therefore, whatever Grove owns. Is that correct? No, your honor, because they're separate corporations. Under the law of corporations, they are separate. Just for instance, Manitowoc cannot take advantage of the workers' compensation immunity of Grove. That was actually found on the first appeal. That, you know, there's no intermingling. That would only be under an ego theory, your honor, which is not present in this case. Thank you. Let me please the court. Your honor, Dennis Herbert for the Manitowoc entities. I'm not going to name them all because they're long. Let me clear up something, if I could, from the outset. If Manitowoc was determined to be the employer and the negligence claims were then against Grove, what you have is a situation where you're calling Manitowoc the employer. Why you're calling Manitowoc the employer is because Manitowoc would have controlled the manner in which these people did their work, which includes safety policies and procedures. If then they went after Grove for negligence, there would be no duty on Grove because Grove did not control the manner in which these workers worked at the facility. I'm not sure what Plaintiff is attempting to do. It's certainly not a reverse piercing or a piercing of the corporate veil. It's kind of an end around type situation where he's trying to get to Grove because all the evidence, all the facts, point to Grove as the entity in control and the entity that had the duty to provide a safe work environment for Mr. Grimsley. This harkens back to something that Judge Fischer was asking about to your adversary about all the logoing and the branding and then the name being all over the relevant documents, including the safety materials. And then we have against that the deposition testimony of the various individuals who were at Shady Grove who all said, Grove is our employer. Isn't that enough to present an issue of fact? Now we're at summary judgment land. And if not, why not? We're in summary judgment. No, none of those facts have been refuted or contested. Every fact that appears in this case is, you know, we're saying that it's in the light most favorable to the appellant. And none of those were Grove employees. Where the Grove employees said that all safety policies and procedures were implemented and designed by Grove. Should a jury have a chance to decide whether their understanding is corroborated in some way? Because one could look at all these documents, the operating manuals, who to call if you're unhappy with the hydraulic crane you buy, the safety materials, all the public may view this as a Manitowoc operation. Shouldn't a jury decide whether those employees are under a misunderstanding? No, the jury, it shouldn't be presented to the jury. Because what you have here, the only evidence that appellant has in their theory that Manitowoc was the employer and not Grove are these documents with logos, branding, marketing. What about Mr. Smith's role though? Mr. Smith was Grove's human resources manager. Mr. Grove then under the umbrella of Manitowoc was promoted to regional manager. Mr. Smith, I'm sorry. Mr. Smith then became regional manager, still held on to Grove as in that region. That's what he became. He was promoted to that. Who's his employer? Who's Mr. Smith's employer from your point of view? He got a promotion. Manitowoc must have given it to him, so isn't that his employer? I don't think it's of any relevance here. Who paid a salary? Who paid a salary would have been Grove. And that continued from the time he was only the human resources manager. The paychecks, the administrative function of the Manitowoc company as the parent were administrative functions, including payments. They issued paychecks, but all those paychecks, any money expended by the Manitowoc company was then charged back, account reconciliation, back to the subsidiary. But why, why when when the appellant here, Grimsley, when Grimsley points to those facts, okay, why isn't that a disputed issue of material fact? Because none of those facts, they're certainly genuine. Well, they, they certainly not material because branding and logos and an insurance company, not material as to who pays you. I mean, struggled with that. Well, well, it's, it's really not because there was no evidence presented by appellant to contest the fact that Grove actually paid everybody because of the account reconciliation charge that is part and parcel. I think what you're saying is there's no evidence that's been presented by Grove to dispute that there was a charge back to Grove. And there is likewise, there's no evidence to refute the fact that Manitowoc paid Grimsley. Well, no, there, there is because the testimony and affidavits of the people who were deposed laid that all out that this, the way the corporate, and this is the way most large corporations are structured. The parent company does the administrative duties, their name quite possibly and most likely appears on the paycheck, but the money, the actual money is charged back with account reconciliation to the subsidiary. Grove was charged back. So any money that was paid to any of these workers at the Shady Grove facility was charged back to Grove. That's just the way that system works. And it's the way most. It was a conduit. Manitowoc was a conduit to get the money to the employee, but the actual dollars were, came from Grove. Yes, from Grove's accounts. What if Grove said here, and that's not what Ms. Hersberger said, nor did her client, but what if they came in here and said, we're not the employer. He got paid by Manitowoc. Because they didn't want to pay, if in this whole case, they didn't want to have their workers' compensation premiums skyrocket because of this crane accident. Okay. Well, under the functional analysis test, that doesn't even come in. That what? As the district court, the functional analysis test that was announced at Mohan, the judge Schwartz referred to, that doesn't even come in. If the functional analysis test is conclusive, then there is no indicia of control. Who paid who, who did this, who did that, other than that are on indicia of control that is only looked at if the functional analysis is inconclusive. So for our benefit, what function did Grove provide? What function did Manitowoc provide? Here's what Grove, here's Grove's function. This is from plaintiff's amended complaint. Paragraph 54, at all times relevant here to Grove engaged in the design, manufacture, distribution of a diversified line of lifting solutions, including mobile telescope cranes, comma, specifically a design known as the Grove mobile wheel mounted hydraulic crane. The TM, I'm not sure, I can't read my own writing. We know there's a lot of numbers that follow. We've seen the complaint. Is the complaint a verified complaint? The amended complaint? Yes. Sure it is. It's verified. Do you know what I mean by verified? Plaintiff actually told the court that they needed to amend the complaint to conform to the evidence, and this is what's in. So there's independent evidence in the summary judgment record that would corroborate that point that you just raised in the complaint, correct? Yes. From every deponent that was... You don't dispute that it was Manitowoc who instructed Grove to fire Mela? No, it was... And that direction was carried out? It was discussed with them as the parent company. That is something that parent would do. Something that serious would be discussed by them. But they not recommend the firing of Mela? Manitowoc? Well, they may have recommended, but we're still talking about an issue of control. And under the functional analysis test, that doesn't even come into play here. Oh, I mean, if it's recommended and they are the parent company and that recommendation is carried out, you don't believe that there is actual control over what occurs on Grove's property? No, I don't believe that that's control recommendation by them, which may or may not be followed by Grove. Grove is a separate legal entity. All the subsidiaries are separate legal entities. The way corporate law works is that the parent has certain duties, responsibilities. The subsidiaries do. All separate and all distinct in a legal sense. Let me ask you the same question as Mr. Englert, but in reverse. Mike, time's up. It's okay, you can answer this question and any others. It doesn't... Didn't your client undertake a duty to provide a safe work environment at Shady Grove by putting his name and logo on the work safety documents? No, that's just logoing, branding, marketing. All the Grove employees that were deposed, that were asked about that, what's called a GSA, a job safety assessment. That's the document you're talking about. All of them testified that it was Grove that implemented and issued those GSAs. Manitowoc's logo was on there, but that's all that was on there, a logo. I had started to ask you about functions that Grove provided and you said, quoting back to the complaint, the design manufacturer of lifting things. What function does Manitowoc provide? Manitowoc, as the district court stated, acted as an administrative hub for their subsidiaries. That's what a parent company does in a corporate structure like this. And that's what they did. Manitowoc did not produce any product. They did not design any product. They did not manufacture any product. They were acting as a typical parent company to their subsidiaries. The reason why I wanted to ask you this is that your response to Judge Fuentes essentially was, we never need to look at condition of control if we find that the functional analysis dictates who the employer is. Am I understanding correctly? That is what the Mohan case said and that is what the Third Circuit said in their prior opinion in this case. Is it your position then that both Mr. Grimsley and Mr. Mallott were furthering the functions of Grove because they furthered the design manufacturer? Absolutely. They were both assemblers in the customer acceptance center at Grove in a facility that's owned by Grove and Grove as a legal entity had control over those people. One final question just to understand the picture. Is your answer to the effect that Manitowoc neither designed, manufactured, or sold the Manitowoc cranes worldwide? Is that a worldwide answer or is that limited to Shady Grove facility? That's a worldwide answer. So whatever is sold under their name wherever is manufactured, designed, and sold by a Grove-like entity? By one of the subsidiaries. Be that subsidiary the Manitowoc Crane Companies, Manitowoc Cranes, Grove U.S., LLC. That's all being separate entities. And the Manitowoc Company, the parent company, did not manufacture any crane. I hope not to use all my five minutes but I certainly will answer any questions that your honors have. I do want to address the question that was raised about Manitowoc owning the facility and to get there your honors have to look because the answers were not forthcoming in discovery in the case but if you look at the actual filings for the SEC where they're reporting manufacturing and office space owned in Shady Grove over the years that number changes. It increases and that corroborates and corresponds with testimony about Manitowoc building additions at the facility. If the idea is well that number is just representing Grove's interest in the land. Land is a fixed quantity. The square footage of the land is the square footage of the land. There's no testimony. There's no indication that Grove bought more land but there's more facility space and Manitowoc is attributing it to the Manitowoc Company, Inc. So the land is owned by Grove? The land is owned by Grove. The buildings were, from your point of view, you're saying the evidence says that they added buildings, structures? Yes, Judge. And those are owned by Manitowoc? Manitowoc claims ownership in its documents. Through the SEC filings based on the square footage or however they describe it. I understand. Okay, thank you. I want to touch briefly. Did you say ownership via stock? They're claiming it in their disclosures to the public and how much facility and office space they own in Shady Grove. You don't suggest that alone makes Manitowoc responsible for what occurred to Grimsley? Well, if they are owning and operating the factory and the facility, it creates a disputed issue of fact as to whether or not it's in fact Grove manufacturing the cranes or Manitowoc actually manufacturing the cranes. If Manitowoc owns the facilities that are making the cranes, you know, it's one of those, if it looks like a duck and it sounds like a duck, it's probably a duck. Help me understand it a little bit better because this has nothing to do with the actual manufacturer. This was an accident that occurred when somebody driving or operating a crane, unfortunately, resulted in a worker's death. It was part of the manufacturing process, Judge, and it was actually being done pursuant to a manufacturing work instruction that was issued. Because they were testing. Yes, Judge, and they were moving them to the location. I did want to touch on briefly on the chargebacks that were referenced. Now, the appellees have their position on chargebacks and whether this is commonplace or proper, but the underlying issue is that the money is all Manitowoc's. It's all Manitowoc's money. It may be attributed to Grove or another subsidiary by an accounting function or a chargeback, but the actual process of the money is it's Manitowoc's money, and that's what's being paid to these people. Now, it may make their accounting simpler to use these fictional chargebacks, but in undertaking the benefit of simpler accounting, they're exposing themselves to the burden of liability because they are actually paying. But that theory means that all subsidiaries, where the money is benefiting all of them or running through each of them, the parents for every subsidiary is going to be responsible for everything that happens at every sub's property. Not necessarily, Judge. I would hope that the parent would be acting as an administrative hub with bank accounts that were owned and operated and controlled by the individual subs, controlling the other sub's bank accounts, paying to and from those accounts rather than from the centralized parent account and issuing a IOU or a UO me back out of our main account. And that's how it was done here. It's Manitowoc's money. It's something gets paid for Grove. Grove gets a slip that says you owe us this. There's no actual Grove money. I don't follow you. Are you suggesting that because the money flows from Grove to Manitowoc as the parent company, that makes Manitowoc responsible? The other way, Judge. Manitowoc is paying everything for Grove. Right. The testimony of the Grove doesn't, no dollars actually change between Manitowoc and Grove. So if Manitowoc had paid a bill on behalf of Grove, the Grove then would actually pay Manitowoc back. That's not what happens. Manitowoc pays the bill and on their ledger they say, Grove, you owe us this expense. Do you have evidence that says that there was no money moved? Because I remember seeing a document that like had sort of the word charge back on it as if you're going to have to pay us back. And that's what it says and that's what it sounds like. But if you look at the deposition testimony of Mr. Klaber, who's their witness, he says the money never moves. No money moves. And that's in the record, Judge. Okay, thank you. And I didn't address it the first time around, but it's still an issue in the case with the pure question of law concerning Manitowoc's deemed admission by claiming to be the employer in the workers' compensation case was addressed in the reply brief. The proper procedures weren't followed to make any correction there. So as it stands, Manitowoc is in the workers' compensation court, the administrative process in Pennsylvania, as Mr. Grimsley's employer. Well, they were protesting along the way about their status, as I understand it. So they can still disclaim responsibility under the workers' compensation law by statute. Judge, they are 90 days after filing the notice of temporary compensation payable. They waited almost two years to unilaterally file an amended notice of temporary compensation payable. The process to actually change it requires a petition and a hearing, which now, almost six years later, they haven't undertaken today. Thank you, counsel. Thanks. All right. Thank you all for a well-argued case. The Court will take the matter under advisement.